[File No. 7205]

LILLIAN CLAUGHTON JORDON, Appellant, v. WESTERN STATES LIFE INSURANCE COMPANY, a Corporation, Respondent.

(53 NW2d 860)

Opinion filed June 4, 1952

*Sinness & Duffy,* for appellant.

*Burnett, Bergesen, Haakenstad & Conmy,* for respondent.

Herbert G. Nilles and John A. Zuger, Amici Curiae.

BURKE, J. The question in this case is whether the statute requiring an incontestability clause in all life insurance policies written in this state, and other statutes relating to life insurance contracts, have the effect, after the period of contestability has expired, of nullifying an aviation exclusion rider which has been attached to the policy.

On August 10th, 1945, the defendant company issued its policy of life insurance to Thomas Henry Jordon, agreeing to pay to Lillian Claughton Jordon, the wife of the insured, the sum of $20,000.00 upon the receipt by the company of due proof of the death of the insured. Attached to the policy was a rider which provided:

"Except as hereinafter provided, the Company shall be under no liability under the Policy should the death of the Insured occur:

1. * * *

2. * * *

3. As a result of operating or riding in any kind of aircraft or from exposure to any hazard incident thereto (including falling or otherwise descending from or with any such aircraft) other than as a fare-paying passenger of a commercial airline flying on a regularly scheduled route between definitely established airports.

In the event the Insured's death should occur under any of the conditions defined above, the Company's liability shall be limited to the payment of a single sum equal to the greater of (a) the premiums paid on said Policy together with compound interest at the rate of 3% per annum, decreased by any indebtedness on or secured by said Policy; or (b) the reserve under said Policy decreased by any indebtedness on or secured by

said Policy; but in no event shall the amount so paid be more than the amount payable if this provision were not attached."

The policy also contained an incontestability clause which provided:

"Incontestability. This policy shall be incontestable after two years from date of issue (1) except for the non-payment of premiums; (2) except that part or parts of the policy, if any, relating to benefits in the event of total and permanent disability; (3) except that part or parts of the policy, if any, relating to additional insurance benefits in event of death by accidental means; (4) except that part or parts of the policy relating to (a) military or naval service for any country at war and (b) aviation hazards."

Thomas Henry Jordon, the insured, died on January 2nd, 1949, as the result of operating or riding in an aircraft, but not as a fare paying passenger of a commercial airline flying on a regularly scheduled route between definitely established airports. Thereafter, Lillian Claughton Jordon, the beneficiary named in the insurance policy, filed a claim with the defendant company for the full amount of the face of the policy. The company rejected the claim and tendered to the plaintiff beneficiary the sum of $3,233.38, which tender represented a refund of all the premiums paid by the insured with compound interest thereon at the rate of 3% per annum and which sum was greater than the amount of the reserve upon said policy.

The plaintiff rejected the tender and brought this action for the full amount of the insurance provided in the principal insuring clause of the policy. The defendant company answered, alleging that the insured's death had resulted from a risk which had been specifically excluded from coverage in the policy. At the trial of the case, it was conceded that the insured's death was due to a risk which was so excluded, but it was contended by the plaintiff that the exclusion, after the policy's period of contestability had expired, was one which was prohibited by statute and that it was therefore void. The trial court found, that whether the exclusion was prohibited or not was immaterial, that both parties knew the provisions of and understood the contract; that it was the only contract between the parties and

that plaintiff must accept the contract as written or repudiate it in its entirety. Accordingly the judgment of the trial court decreed that plaintiff should recover the amount tendered by the defendant. Plaintiff has appealed from the judgment and demanded a trial de novo in this court.

The question to be decided has been stated, and since all of the facts have been stipulated, it is solely one of statutory construction. The question first came before the Insurance Commissioner of this State in 1939. Section 6625 C. L. 1913 (now Sec. 26–0342 NDRC 1943) provided:

"No policy of insurance shall be issued or delivered in this state until:

1. If it is a life insurance policy of any kind, the form thereof has been filed with the commissioner of insurance."

In 1939, the Insurance Companies doing business in this State and wishing to incorporate aviation exclusion clauses in their life insurance policies, filed forms of policies containing such clauses with the Commissioner of Insurance and asked his approval of the forms. The Commissioner of Insurance submitted to the Attorney General the question of whether such clauses would conflict with the incontestability clause required by statute. On November 18th 1939, the Attorney General gave his opinion that there would be no conflict. The forms were thereupon approved by the Commissioner, and ever since, such policies have been written in this State with departmental approval. Presumably acturarial consideration was given to the fact that aviation hazards were excluded and that such consideration was reflected in the premiums charged for the policies. It is of record that the exclusion of aviation hazards had the effect of reducing the premiums in the instant case. Thus at the outset of our consideration, the defendant has in its favor the fact that it was acting fairly, in good faith and in accordance with long standing administrative construction. These considerations, however, are of no avail if it has acted in violation of statutes which are clear and unambiguous in their meaning. Long standing administrative construction is of cogent influence in the construction of an ambiguous statute. State v. Equitable Life Assurance Society of U. S., 68 ND. 641, 282 NW 411; Northern

States Power Co. v. Board of Railroad Commissioners, 71 ND 1, 298 NW 423. But resort to extrinsic aids to construction is not proper where the meaning of a statute can be definitely ascertained by a consideration of its provisions alone. 59 CJ 1012, 50 Am Jur 272. Furthermore, a statute must be construed as a whole, and the intention of the whole act will control the interpretation of its parts. Schneider v. Marquart, 45 ND 390, 178 NW 195. And legislative intent must be sought first in the language of the statute itself, considered as a whole. City of Dickinson v. Thress, 69 ND 748, 290 NW 653.

All of the statutes before us in this case hark back to the reports of the Armstrong Committee and the "Committee of Fifteen" which pointed out the evils then existing in the insurance business and recommended legislation to correct such evils. North Dakota, early in 1907, was the first state to enact the recommended legislation into law. The statute governing the provisions of life insurance policies was Chapter 140 Laws of N. D., 1907, Section 1 of Chapter 140 provided:

"No policy of life insurance shall be issued or delivered in this state and no policy of life insurance of a life insurance company organized under the laws of this state shall be issued unless authorized by the provisions of this act."

Without substantial change this section remains as Section 26-0325 NDRC 1943. Section 2 of Chapter 140, supra, provided several forms of standard policies. Each of these standard forms contains an incontestability clause and a direction with respect to exceptions in insurance coverage. The provisions in these respects are identical in each of the standard forms. The incontestability clauses are as follows:

"The policy constitutes the entire contract between the parties and shall be incontestable from its date except for non-payment of premiums and except as otherwise provided in this policy."

The directions concerning exceptions or conditions read:

"Conditions (The policy may here provide for restrictions of liability by reason of travel, occupation, change of residence and suicide. These restrictions, except such as refer to military and naval services in time of war, must be applicable only to cases

where the act of the insured provided against occurs within two years after the issuance of the policy)."

In redrafting the above provision for the Revised Code of 1943, the Code Commission altered the second sentence thereof so that it now reads:

"These restrictions except such as refer to military and naval services in time of war, must be applicable only to cases where the act of the insured provided against occurs within one year after the issuance of the policy in the case of suicide and within two years in all other cases." Section 26–0326 NDRC 1943.

This change was made solely for the purpose of eliminating an apparent conflict between the provisions of the standard form and Section 26–0324 NDRC 1943, which provides that suicide shall be no defense to a life insurance policy which has been in force one year.

The statutory language above set forth is too clear to allow any substantial controversy. Under the terms of the statute, insurance companies which use the standard form may insert in the incontestability clause any and all conditions and restrictions on liability that may occur to them but the effectiveness of all such restrictions, except those relating to non-payment of premiums and military and naval service in time of war, is limited to a two year period subsequent to the issuance of the policy. Thus writers of standard form policies must, by statutory mandate, bind themselves, when two years have elapsed after the issuance of a policy of life insurance, to pay the full amount stated in the principal insuring clause thereof upon proof of the fact of death alone, unless of course the premiums have not been paid or the provisions relating to military and naval service have been violated. Sections 5 and 6 of Chapter 140, supra, however, permitted the writing of life insurance policies in other than the standard form but strictly circumscribed the freedom of insurance companies' right to contract as they saw fit, by specifically requiring certain provisions to be contained in every such contract and by prohibiting certain other provisions from being included therein. The incontestability clause required by Section 5, supra, was as follows: (subsection 3)

". . . the policy shall constitute the entire contract between

the parties and shall be incontestable after two years from its date, except for non-payment of premiums and except for violation of the conditions of the policy relating to naval and military services in time of war."

At first blush it would seem that a construction of the above clause requires only an application of the maxim "expressio unius est exclusio alterius." That is to say that the statute, in specifically permitting insurers to make two exceptions to a required incontestability, by a compelling and unavoidable inference limited the right of exceptions to the two expressly permitted.

Respondent, however, in support of its contention that the incontestability clause is not a mandate as to coverage cites the case of Metropolitan Life v. Conway, 252 NY 449, 169 NE 642; Pacific Mutual Life Ins. Co. of Cal. v. Fishback, 171 Wash 244, 17 P2d 841; Wilmington Trust Co. v. Mutual Life Ins. Co. (DC) 68 F Supp 83 and several others which point out a distinction which exists between a defense that a certain risk is not covered by an insurance policy and a defense which contests the validity of the policy itself. It is said in these cases that the defense that a risk is not covered, does not contest the policy, but in reality seeks to enforce it and that therefore such a defense is not barred by an incontestability clause. This distinction is clear cut as between a defense of fraud in the inception of the policy and a defense that death was due to an excluded risk. The argument that the same distinction exists between a defense that the insured met his death in military or naval service in time of war and a defense that the insured was killed in an airplane accident is tenuous and unconvincing. Indeed, it seems quite obvious that each of these defenses is a defense that the insured met his death as the result of an excluded risk. It has been pointed out by respondents that early in the history of life insurance, it was customary for insurers to insert in their policies conditions as to military service, travel etc., which were not exclusions of coverage but conditions, the violation of which would void the policy. Respondents urged that, since the statute under consideration was written in 1907, it was such conditions which the legislature had in mind when the incontestability clause was first

enacted, and that application of the rule, "expressio unius est exclusio alterius" would give to the incontestability clause the effect of excluding only defenses that conditions which voided the policy had been violated and not defenses that death resulted from an excluded risk. Applied to the instant case the contention would be, that if this policy had provided the contract would be void if the insured rode in a private airplane, the 'defense that the insured was killed while riding in such a plane would be barred, but since this policy provided only that the insured should not be covered while riding in a private plane such defense was not barred. Even if there were no evidence to the contrary it would be difficult for us to conclude that the legislature intended a distinction of this nature. There is, however, such evidence. Each of the standard policies set forth in Chapter 140, supra, refers to conditions to which the policy may be made subject and in every instance such conditions are not conditions which void the policy but are conditions which are "restrictions of liability." Included among these are "restrictions" which "refer to military and naval service in time of war." We think it is clear therefore that when it enacted Chapter 140, Laws of North Dakota 1907, the legislature considered the provisions of life insurance policies relating to military and naval service in time of war as restrictions of liability and not as conditions voiding the policies.

It is a legitimate inference, therefore, from the fact that the legislature excluded this "restriction of liability" from the operation of the incontestability clause, that it considered that a defense that the insured had met his death due to a cause upon which liability had been restricted, was in fact a contest of the policy, or in other words, that any contest of liability to pay in accordance with the terms of the principal insuring clause of the policy upon proof of the fact of death, because of any conditions, exceptions or exclusions contained elsewhere in the policy was a contest of the policy.

The Supreme Courts of Nebraska and Louisiana have given this construction to incontestability clauses in cases involving aviation exclusion riders. State ex rel. Nat. Life Ins. Co. v. Smrha, 138 Neb 484, 293 NW 372; Bernier v. Pacific Mutual

Life Ins. Co. 173 La 1078, 139 So 629, 88 ALR 765. The Supreme Courts of Alabama, Iowa, Kansas, Minnesota, North Carolina and Texas have held that incontestability clauses barred defenses that the death of the insured was due to the excluded risk of suicide. See Anno. 55 ALR 549.

We think, however, the case for such an interpretation is stronger in North Dakota than in any of the other states mentioned. As we have heretofore pointed out, the requirement of an incontestability clause was enacted as a part of Chapter 140 Laws of North Dakota, 1907, and the interpretation of the whole act will control the interpretation of its parts. We have discussed the standard policy forms provided for by this act and have shown that the provisions with respect to restrictions and incontestability contained therein, in clear and unequivocal language, made such standard policies incontestable after two years, in the sense that the insurer could not raise any defense, including exclusion of coverage, to the payment of the policy, except non-payment of premiums and violation of restrictions relating to military and naval service. If we were to say therefore that the incontestability clause, required in non-standard policies, did not prohibit a defense of exclusion of coverage, not specifically and permissibly excepted from the operation of the clause, we would be saying that, in enacting Chapter 140 supra, the legislature intended to set up two standards of incontestability, one of which should apply to writers of insurance which used the standard form and the other of which should apply to those which did not use the form. Such a result would verge upon the ridiculous. We think it eminently clear therefore, that, whatever may be the proper interpretation of an incontestability clause in the abstract, or in the statutes of other states, in this state the legislative intent that the incontestability clause should bar all defenses, not expressly and allowably excepted from its operation, is distinctly expressed.

It has been argued that this construction of the incontestability clause creates inconsistencies with other important provisions of the insurance laws. First among those pointed out are Sections 26–0603 and 26–0301 NDRC 1943. These sections are a part of the general insurance laws and they relate to all

forms of insurance. The first of the statutes provides that where the insurer has excepted a peril the insurer shall not be liable where the loss would not have occurred except for that peril. The second requires that the policy shall state the risks insured against. Both of these statutes were enacted as a part of the Code of 1895. In our view, Chapter 140 Laws of North Dakota 1907, had the effect of withdrawing life insurance policies from the control of these statutes. There is no inconsistency in retaining them in the code because they are still operative as to all other forms of insurance.

Next it is stated that this construction conflicts with the requirement that all non-standard policies shall contain a provision that where "the age of the insured has been understated the amount payable under the policy shall be such as the premium would have purchased at the correct age." This provision is contained in subsection 5 of Section 26–0335 NDRC 1943. The required incontestability clause appears in subsection 3 of the same section. If an adjustment of the amount of the policy to conform to the age of the insured be considered a contest of the policy, then subsection 5 is statutory exception to the provisions of subsection 3. There is nothing inconsistent in the existence of such an exception as the same provision appears as an exception to the incontestability clause in the standard form policies. Furthermore, subsection 5, supra, must also be an exception to subsection 4 of Section 26–0336 NDRC 1943, which prohibits any policy from containing a "provision for any mode of settlement at maturity of less value than the amount insured on the face of the policy."

Lastly, it is contended that this construction of the incontestability clause will result in a conflict with the statutes against discrimination. We see no merit in this contention. There is nothing in our construction that prevents insurance companies from classifying risks according to expectation of life whether such expectation be limited by disease, occupation or hobby, nor does it approve practices prohibited by Section 26–1009 NDRC 1943.

We are fully aware that most of the recent decisions which

have considered the question of whether an exclusion of coverage in a life insurance policy conflicts with the incontestability clause have reached the conclusion that there is no conflict. See Anno 17 ALR2d 1050. The question before us here is simply; what legislative intent is expressed by the language of Chapter 140, Laws of North Dakota 1907? That intent is clearly expressed and it is our duty to give effect to it. State v. Rother, 56 ND 875, 219 NW 574; City of Dickinson v. Thress, 69 ND 748, 290 NW 653; Marks v. City of Mandan, 70 ND 434, 296 NW 34.

It appears therefore that the insurance policy here under consideration contains an incontestability clause which excepts from its operation and effect a risk additional to those which the clause required by statute excepts. This additional exception must be considered void and the policy must be construed and enforced as it would have been, had it contained the statutory clause. In Shank v. Fidelity and Mutual Life Ins. Co. 221 Minn 124, 21 NW2d 235, 238, the court quoted with approval from 29 Am Jur (Insurance Sec 190) 206, as follows: ". . . where there is a conflict between the law and statutory provisions on the one hand and the provisions of an insurance policy on the other, the former must prevail."

See also 44 CJS (Insurance Sec. 242) 1005; Homan v. Employers Reinsurance Corp. 345 Mo 650, 136 SW2d 289, 127 ALR 163; Kujawa v. American Indemnity Co. 245 Wis 361, 14 NW2d 31, 151 ALR 1133. Since the statutory incontestability clause, where the insured dies after the expiration of the contestable period, bars all defenses to the policy, not specifically and allowably excepted from its operation, it follows that, under the stipulated facts in this case, defendant's liability under the principal insuring clause of the policy, here sued upon, is established. The judgment of the district court is therefore reversed.

Since there remains a controversy between the parties as to the actual amount due under the policy, and that controversy has not been considered or decided by the district court, the case is remanded for such further proceedings as may be necessary.

Morris, C. J., and Grimson and Christianson, JJ., and Miller, Dist. J., concur.