[No. B146336. Second Dist., Div. One. Jan. 9, 2002.]

ARI BIALO et al., Plaintiffs and Appellants, v.
WESTERN MUTUAL INSURANCE COMPANY, Defendant and
Respondent.

COUNSEL

Jeffrey D. Diamond for Plaintiffs and Appellants.

Shernoff, Bidart & Darras, William M. Shernoff, Michael J. Bidart, Jeffrey Isaac Ehrlich; Quisenberry & Kabateck, Brian S. Kabateck, Suzanne Havens Beckman and Heather M. Mason for Consumer Attorneys of California, United Policyholders, Consumer Federation of California, Congress of California Seniors, Foundation for Taxpayer and Consumer Rights and California Public Interest Research Group as Amici Curiae on behalf of Plaintiffs and Appellants.

Goodheart & Hartman and Michael R. Goodheart for Defendant and Respondent.

Horvitz & Levy, Lisa Perrochet and Stephanie Rae Williams for National Association of Independent Insurers and Personal Insurance Federation of California as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**ORTEGA, J.**—Ari and Flora Bialo appeal from the summary judgment dismissing their first party insurance bad faith case against Western Mutual Insurance Company (Western), their homeowners insurer during the Northridge earthquake. The case arose from Northridge earthquake damage to the Bialos' home. Western obtained summary judgment solely on statute of limitations grounds. Specifically, the case involves the applicability of newly enacted Code of Civil Procedure section 340.9 (Stats. 2000, ch. 1090, § 1), which extends the limitations period for some Northridge-related cases. (All further undesignated section references are to the Code of Civil Procedure.)

The Bialos timely submitted a claim for earthquake damage, which Western paid. Later, the Bialos found additional damage. The Bialos eventually

filed a second claim with Western, but not within the reporting period required by their policy. When Western rejected the second claim, the Bialos brought this case. The Bialos filed their case, the summary judgment was issued, and the Bialos timely appealed, all before January 1, 2001, section 340.9's effective date.

Section 340.9 states: "(a) Notwithstanding any other provision of law *or contract,* any insurance *claim* for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section *solely* because the applicable statute of limitations has or had expired is hereby revived and a *cause of action* thereon may be commenced provided that the *action* is commenced within one year of the effective date of this section. *This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage.*

"(b) *Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period.*

"(c) Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section.

"(d) *This section shall not apply to either of the following:* [¶] *(1) Any claim that has been litigated to finality in any court of competent jurisdiction prior to the effective date of this section.* [¶] (2) Any written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement." (Italics added.)

On appeal, the Bialos contend section 340.9 revives their case by extending the limitations period, because they (1) contacted Western about their second claim before January 1, 2000, (2) commenced their case before section 340.9's January 1, 2001, effective date, and (3) their case was dismissed solely on limitations grounds. Thus, the Bialos argue their case expressly satisfies all section 340.9's requirements.

Western responds (I) section 340.9 does not alter the requirement that insureds timely report their Northridge earthquake damage claims to the insurer within the claim notice period required by the policy. According to Western, section 340.9 does not extend the limitations period for a case in

which the insured did not report the damage claim to his insurer within the period required under the policy. Essentially, Western argues section 340.9 applies only to cases dismissed on limitations grounds where the limitations bar is based on the *untimely filing of the lawsuit*, not, as here, on *untimely notice of the loss to the insurer*. Western argues that, if so narrowly construed, section 340.9 would not unconstitutionally impair contracts. However, Western concludes that, if construed to revive cases like the Bialos', section 340.9 would violate the constitutional bar against impairing contractual relationships.

Western also claims (II) the Bialos' case was " 'litigated to finality' " in the trial court before section 340.9's effective date despite their timely appeal. Thus, Western concludes section 340.9, subdivision (d)(1) prevents subdivision (a) from reviving the Bialos' lawsuit.

Not surprisingly, since it had not yet taken effect, neither party litigated the effect of section 340.9 in the trial court, which obviously did not rule on its applicability. Although the issue was not litigated below, no one, including the amici curiae which we permitted to file briefs, objects to our considering and deciding section 340.9's applicability to this case. Normally, we ignore arguments, authority, and facts not presented and litigated in the trial court. ▮ Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 394-398, pp. 444-451.) However, where, as here, the issue is purely legal and presented to us on undisputed facts, and involves a matter of public interest, we retain discretion to decide it. (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 5-7 [74 Cal.Rptr.2d 248, 954 P.2d 511].) Our considering the issue is particularly appropriate here, because if the Bialos are correct, section 340.9 resurrects their case. Thus, we consider this issue, litigated by the parties on appeal.

We permitted the National Association of Independent Insurers and the Personal Insurance Federation of California to file an amicus curiae brief supporting Western. We also grant their request to judicially notice section 340.9's legislative history. In addition to supporting Western, the pro-Western amici curiae raised two new issues not advanced by the parties. First, they claim section 340.9 is unconstitutional because it violates due process. Second, they claim section 340.9 at most could revive contract, not tort, claims. We also permitted the Consumer Attorneys of California, United Policyholders, the Consumer Federation of California, the Congress of California Seniors, the Foundation for Taxpayer and Consumer Rights,

and the California Public Interest Research Group to file an amicus curiae brief supporting the Bialos. The pro-Bialos amici curiae responded to all the arguments raised in the pro-Western amicus curiae brief. However, we decline to address these new issues raised only by the amicus curiae briefs. (*Costa v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1177, 1187-1188 [77 Cal.Rptr.2d 289] [appropriate to decline to consider constitutional challenges to a statute raised only by amicus curiae briefs]; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 618, p. 649.)

After briefing was completed, two cases were published, both now final, which resolve most of the issues raised here. In *Hellinger v. Farmers Group, Inc.* (2001) 91 Cal.App.4th 1049 [111 Cal.Rptr.2d 268] and *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247 [109 Cal.Rptr.2d 611], Divisions Four and Three of our district upheld section 340.9, rejecting impairment of contract and due process challenges. The cases held the section applies to (1) contractual limitations periods created in insurance policies, and (2) cases pending on appeal on the section's effective date.

We conclude (I) section 340.9 applies to cases where the otherwise applicable limitations bar is based on either untimely notice to the insurer or untimely filing of the lawsuit, and as so construed does not unconstitutionally impair contracts. We also conclude (II) the Bialos' case will not be "litigated to finality" until their timely appeal is final.

Thus, section 340.9 revived the Bialos' lawsuit. We reverse the summary judgment dismissing the case.

## FACTS

The Bialos' policy required that in the event of a covered loss, they "give immediate notice to [Western] or [its] agent," and "submit to [Western], within 60 days after the loss, [their] signed, sworn statement of loss[.]" The policy also stated: "No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after inception of the loss."

In their separate statements, the parties agreed on the following facts: "1. On January 17, 1994, [the Bialos'] home . . . was damaged by the Northridge Earthquake. [¶] 2. A claim was made for known Earthquake damage with Western . . . . [¶] 3. The original claim was paid to the satisfaction of [the Bialos] after consultation with contractors of their choice. [¶] 4. After the payment, the [Bialos] became aware of other damages.

Specifically, '. . . the major thing is upstairs bedroom . . . structurally it seems, to be wobbly.' [¶] 5. These other damages were discovered about 1 to 1 1/2 years after the earthquake, or by mid-1995. [¶] 6. The first time the other damages were brought to the attention of [Western] was in a September 17, 1997 letter. [¶] 7. The policy provides that a claim must be made within one year after the inception of the loss."

In their separate statement of undisputed facts, the Bialos stated: "1. In 1994, the Bialos were paid by Western Mutual the sum of $112,726.80 . . . and the claim file was closed by the insurer. [¶] 2. At the time payment was made in 1994 by Western . . . to the Bialos, they were of the opinion that the claim had been fully paid. [¶] 3. Neither Ari Bialo nor Flora Bialo are or ever have been engineers or construction professionals. [¶] 4. After the receipt of payment in 1994, the Bialos were of the opinion that their claim was closed and could not be re-opened if additional earthquake damage was believed to have occurred. [¶] 5. In or about July 1997, the Bialos learned for the first time that they could ask the insurance company to re-open their claim and through legal counsel, asked that Western Mutual do so. [¶] 6. In August 1997, the Bialos obtained a repair estimate from Jack Tracy Construction in the sum of approximately $325,000. [¶] 7. A Sworn Statement in Proof of Loss was submitted to Western . . . in or about May 1998. . . ."

The Bialos filed their complaint on September 30, 1999. The complaint alleged causes of action for breach of insurance contract, tortious breach of the covenant of good faith and fair dealing, and declaratory relief.

Western sought summary judgment, arguing the case was barred by Insurance Code section 2071's limitations period. Western argued the Bialos' failure to timely report the newly discovered losses to Western within the one-year period required by their policy barred their case. The Bialos opposed the motion on two grounds. First, they claimed their earlier reporting of some losses should toll the limitations period for at least some of their later-discovered losses. Second, they argued the limitations period was tolled because Western had not yet formally rejected the later claim.

The parties agreed that retired Judge Robert London would decide the motion. The motion was argued in May 2000. After the argument, Judge London issued an order: "1. The Court's tentative ruling is to grant the Motion for Summary Judgment on behalf of [Western]. [¶] 2. Before a final ruling is made, [the Bialos] will [be permitted] to submit written argument regarding whether the August 14, 1997 estimate prepared by Jack Tracy Construction Company evidences any division of damages between those that were discovered by mid-1995 and those that might have been discovered thereafter."

After considering the submitted additional argument and Western's opposition, Judge London granted the motion, stating: "a) [The Bialos'] home which was insured by [Western] suffered damages caused by the January 17, 1994 'Northridge' earthquake. A claim was made, adjusted and paid in June 1994. [¶] b) On September 17, 1997 [the Bialos] made a 'supplemental' claim. [¶] c) [Western] agreed to investigate the claim without waiving its right to argue that the claim was barred by the one-year 'suit' limitation contained in the policy of insurance. [¶] d) A 'Proof of Loss' claim was made on May 22, 1998[.] [¶] e) The 'Proof of Loss' claim was rejected by [Western] on August 5, 1998. [¶] [The Bialos] essentially argue that claims of damage can be 'divisible' *i.e.*: That the damages discovered by [the Bialos] in 1994 are time-barred, whereas damages discovered thereafter are not so time-barred. Such claims are not divisible. These damages should have been discovered and the Motion is granted."

Based on Judge London's ruling, the trial court entered judgment for Western on November 16, 2000. The Bialos timely appealed on November 22, 2000.

On appeal, the Bialos do not challenge the trial court's rulings on the issues litigated in the trial court. As noted, their only appellate contention is that section 340.9 revives their case.

## DISCUSSION

### *Standard of Review*

As noted, the case was dismissed on summary judgment on limitations grounds, although the parties did not litigate the applicability of section 340.9. We nonetheless decided to review this purely legal issue on this undisputed factual record. ■ On appeal from a summary judgment, we independently examine the facts and determine their effect as a matter of law. (*PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 590 [52 Cal.Rptr.2d 877].) We review the ruling, not the rationale. (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 102 [11 Cal.Rptr.2d 468]; *Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1087 [258 Cal.Rptr. 721].)

"The interpretation of a statute . . . is a question of law . . . ." (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) ■ " 'Interpretation and applicability of a statute or ordinance is clearly a question of law.' [Citation.] It is the duty of an appellate court to make the final determination from

the undisputed facts and the applicable principles of law. [Citation.]" (*Sutco Construction Co. v. Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671].) Thus, we interpret the challenged statute de novo as a matter of law.

Statutory interpretation involves a three-step analysis. "First, a court should examine the actual language of the statute. [Citations.] Judges, lawyers and laypeople all have far readier access to the actual laws enacted by the Legislature than the various and sometimes fragmentary documents shedding light on legislative intent. More significantly, it is the language of the statute itself that has successfully braved the legislative gauntlet. It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's 'legislative history.' [¶] In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning [citations] unless, of course, the statute itself specifically defines those words to give them a special meaning [citations]. [¶] If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. [Citations.] . . .

"But if the meaning of the words is not clear, courts must take the second step and refer to the legislative history. [Citations.] [¶] The final step—and one which we believe should only be taken when the first two steps have failed to reveal clear meaning—is to apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable [citations]." (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238-1240 [8 Cal.Rptr.2d 298].) We apply these undisputed rules to the facts and statute before us.

In interpreting a statute, we must follow the " ' "cardinal rule of construction . . . that . . . a construction making some words surplusage is to be avoided." ' [Citation.]" (*State of South Dakota v. Brown* (1978) 20 Cal.3d 765, 776-777 [144 Cal.Rptr. 758, 576 P.2d 473].) " 'To determine [statutory] intent, " 'The court turns first to the words themselves for the answer.' " ' [Citation.]" (In re Littlefield (1993) 5 Cal.4th 122, 130 [19 Cal.Rptr.2d 248, 851 P.2d 42].) Of course, "[i]f the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.]" (*People v. Knowles* (1950) 35 Cal.2d 175, 183 [217 P.2d 1].)

I

The Bialos contend section 340.9 revives their case by extending the otherwise applicable limitations period. The Bialos argue their case meets all section 340.9's requirements. Western responds that section 340.9 altered only the limitations period applicable to the filing of a lawsuit, and did not change the limitations period applicable to notifying one's insurer of a potential claim under the policy. These competing claims require us to construe section 340.9.

We note Western frames the issue as the Bialos' failure to comply with an alleged policy requirement that they notify Western of the additional damage within a year of its discovery. As indicated, the Bialos' policy requires that they notify Western of a covered loss immediately, file a statement of loss within 60 days of the loss, and start any action within a year of loss inception. If the second 1995 earthquake damage is related to the damage reported in 1994, the Bialos' arguably complied with the policy's notice, but not its suit initiation, limitations period. If the 1995-discovered earthquake damage was a new covered loss, the Bialos failed to comply with either the notification or suit filing policy periods. In either case, the limitations bar is created by the policy.

We begin by repeating section 340.9, subdivision (a)'s relevant express language: "Notwithstanding any other provision of law *or contract*, any insurance *claim* for damages arising out of the Northridge earthquake of 1994 which is *barred* as of the effective date of this section [January 1, 2001] *solely* because the *applicable statute of limitations has or had expired* is hereby *revived* and a *cause of action* thereon may be commenced provided that the action is commenced within one year of [January 1, 2001]. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage." (Italics added.) Subdivision (b) states that any "action" complying with subdivision (a) commenced before or within one year of January 1, 2001, shall not be barred based on such a limitations period.

Next, we analyze section 340.9, subdivision (a)'s language. First, subdivision (a) overrides any contrary statutory *or contractual* language. As noted, Western's summary judgment motion seeking to bar the Bialos' case on limitations grounds was based on the one-year contractual provision in the Bialos' policy that they must immediately report policy claims to Western and file suit within a year of discovering them. Second, subdivision (a) revives insurance *claims for damages*, not *actions based on such claims*,

which are barred because the limitations period expired before January 1, 2001. Third, subdivision (a) only revives such claims if the insured contacted the insurer about them before January 1, 2000. Fourth, subdivision (a) only revives claims that have been barred *solely* on limitations grounds; it does not revive claims denied on other grounds. Fifth, subdivision (a) then permits actions based on such revived claims to proceed if begun before or within one year of January 1, 2001.

The Bialos' case facially satisfies all section 340.9, subdivisions (a)'s and (b)'s requirements. First, their disputed second damage claim involves an insurance claim for damages arising out of the Northridge earthquake. Second, the Bialos contacted their insurer about their second claim before January 1, 2000. Third, as decided by the trial court, the Bialos' lawsuit was barred on January 1, 2001, solely because the applicable statute of limitations (i.e., the one-year contractual requirement that they immediately report any claims to Western and file suit within one year of discovery) had expired sometime in mid-1996, or one year after their admitted mid-1995 discovery of the additional damage which constituted their second claim. Western did not raise any other ground supporting summary judgment, nor did the arbitrator or trial court rely on any other ground in granting Western summary judgment. Fourth, the Bialos commenced their action before January 1, 2001.

Nothing in section 340.9's express language supports Western's argument that the section only revives cases where the insured timely contacted the insurer within the period required by the policy, but failed to commence an action within the otherwise applicable limitations period. First, such a reading permits a contractual limitations period imposed in the policy to limit section 340.9's scope. However, the section itself precludes contractual provisions from limiting its applicability. Second, section 340.9 does not read as Western urges us to construe it. The section does not so limit its applicability, nor does it define limitations only to periods barring actions. Third, the section revives claims for damages, not actions based on such claims. Had the Legislature so desired, it would have written subdivision (a) thus: "Notwithstanding any other provision of law or contract, any *action* based on an insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived . . . ." Subdivision (a) does not so read. Moreover, the Legislature included a requirement that the policyholder contact his insurer before January 1, 2000, regarding the potential damage. Had the Legislature intended the meaning urged by Western, it would have required the policyholder to contact the insurer during the reporting period required by the

policy. Again, subdivision (a) does not so read. Thus, section 340.9 on its face revives the Bialos' claim, and does not support Western's interpretation.

In order to proceed to the next analytical step, examining legislative history, we would have to assume that section 340.9 was somehow vague. Although Western seems to argue section 340.9 facially supports its position, Western bases its argument on comments by the bill's author, attached to the bill's legislative analysis, as amended May 23, 2000. By relying on legislative history, Western impliedly argues its position requires us to find section 340.9 vague, requiring recourse to such secondary sources.

Western relies on the following language: "The author has introduced this bill to bring needed relief to the victims of the Northridge earthquake. According to him, the one-year statute of limitations that is current law under Insurance Code Section 2071 has barred victims from being fairly compensated for their losses. He claims that numerous homeowners and homeowners associations were misle[]d about the extent of damage done as a result of the earthquake, and that once they learned the truth they were prohibited by the statute from filing a claim."

However, nothing in the quoted language suggests the statute was designed to apply only to limitations based on untimely lawsuit filing, and not to limitations based on untimely notice of loss filing with the insurer within the claim-filing period prescribed in the policy. Nowhere do the parties or amici curiae point to any legislative history suggesting the Legislature intended that section 340.9 not apply to situations like the Bialos'. For Western's argument to be correct, we would have to conclude that failure to timely notify the insurer within the period prescribed by the policy did not constitute a statute of limitations based bar. Neither below nor on appeal did Western make such an argument.

The pro-Western amici curiae argue that such a bar is contractual, not the more traditional statutorily created limitations bar. The pro-Bialo amici curiae dispute this claim, pointing out that the reporting period set out in the policy is mandated by a statute which requires policies like the Bialos' to contain the one-year notification of the insurer requirement.

The California limitations period for actions on contracts is four years. (§ 337.) However, the Legislature shortened this period to one year for actions on standard form fire insurance policies, which include homeowners and earthquake policies. The Legislature mandated the one-year period by requiring that such polices contain a clause requiring that suit be brought within a year of loss inception. (Ins. Code, §§ 2070, 2071; *Prudential-LMI*

*Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 680 [274 Cal.Rptr. 387, 798 P.2d 1230].) An insurer may lengthen this period by extending the reporting period in the policy. (Ins. Code, § 2070.)

The parties correctly agree that the Legislature may retroactively revive causes of action by extending limitations periods which otherwise would bar such lawsuits. (*Tietge v. Western Province of the Servites, Inc.* (1997) 55 Cal.App.4th 382, 386 [64 Cal.Rptr.2d 53].) We reject the pro-Western amici curiae's claim that because the Legislature enacted the one-year notification period by requiring its insertion in the policy rather than by enacting an express limitations period, it somehow is not a limitations period. (*California Union Ins. Co. v. Poppy Ridge Partners* (1990) 224 Cal.App.3d 897, 903 [274 Cal.Rptr. 191].) Our conclusion is particularly apt where, as here, nothing in the statute's language or legislative history supports such a distinction in this context.

■ Moreover, section 340.9 does not constitute an unconstitutional impairment of contract. " 'The cases are legion which hold that the police power of the state to regulate insurance business cannot be contracted away, and the economic interest of the state may justify the exercise of its continuing protective power notwithstanding interference with existing contracts.' [Citation.]" (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 829 [258 Cal.Rptr. 161, 771 P.2d 1247] [upholding Prop. 103's renewal provisions].) In analyzing contract clause claims in the insurance context, "[w]e begin by assessing the severity of the impairment, since that assessment 'measures the height of the hurdle the state legislation must clear' [citation], then examine the public interest advanced to justify the impairment." (*Calfarm, supra,* at p. 830.)

First, contrary to the pro-Western amici curiae's contentions, section 340.9 does not revive every policy in effect at the time of the earthquake. Section 340.9 has several limitations: (a) the insured must have contacted the insurer before January 1, 2000; (b) the resulting lawsuit must have been filed before, or within a year of, January 1, 2001; (c) the case cannot have been previously settled by represented insureds; (d) the case cannot previously have been litigated to finality. Thus, the statute significantly limits the number of policy claims it may revive. Section 340.9 applies to a limited number of policy claims.

Second, the Legislature found that failure of insurers to satisfy valid Northridge earthquake insurance claims was a significant problem, creating significant economic hardship for earthquake-insured policyholders. This conclusion was one legitimately drawn by the Legislature. We reject the

pro-Western amici curiae's argument that these legislative conclusions were not sufficiently supported by the evidence considered by the Legislature. Likewise, we reject their claim that legislation designed to provide disaster assistance to those impacted by a disaster somehow violates public policy because its benefits are limited to disaster victims.

Our conclusion is consistent with the extensive discussion of these constitutional issues in *Hellinger v. Farmers Group, Inc.*, *supra*, 91 Cal.App.4th 1049 and *20th Century Ins. Co. v. Superior Court*, *supra*, 90 Cal.App.4th 1247. We reject Western's claim that it somehow is unfair to apply section 340.9 to insureds whose cases otherwise would be dismissed because of failure to comply with policy notice provisions as opposed to those who failed to timely file their lawsuits. In both cases, insurers retain all other available defenses, losing only the absolute limitations bar.

For these reasons, section 340.9 does not unconstitutionally impair contracts.

■■■ We conclude section 340.9 revives claims like the Bialos' which fall within its provisions and would otherwise be barred by the insured's failure to timely notify the insurer of potential claims within the policy's reporting period.

## II

Western and its supporting amici curiae contend the Bialos' case cannot be revived under section 340.9 because it had been "litigated to finality in a[] court of competent jurisdiction" before the section's January 1, 2001, effective date, despite the Bialos' having timely appealed the summary judgment dismissing their case before that date, thus falling within subdivision (d)(1)'s exclusion. The contention lacks merit.

■■■ "[A] judgment is not 'final' as long as it remains subject to direct attack by appeal, by motion for a new trial, or motion to vacate the judgment. [Citation.] The phrase has been given that meaning in a variety of appropriate contexts.

"But finality on appeal is not the only meaning of the phrase 'final judgment.' On the contrary, it has long been recognized that 'No hard-and-fast definition of "final" judgment applicable to all situations can be given, since its finality depends somewhat upon the purpose for which and the standpoint from which it is being considered, and *it may be final for one purpose and not for another*. [Citation.] This is so manifest that it would be

idle to attempt any exhaustive examination into the different cases in which the word "final" is employed.' [Citation.] One of those other meanings, however, is relevant here.

"In its most fundamental sense, 'finality' is an attribute of every judgment at the moment it is rendered; indeed, if a judicial determination is not immediately 'final' in this sense it is not a judgment, no matter what it is denominated. . . .

"Finality in this sense not only makes a judicial determination a judgment, it also makes that judgment appealable. . . . [¶] It follows that while it is pending on appeal a judgment is both 'final' in the sense that it is appealable and not 'final' in the sense that the appeal remains unresolved. [Citations.]" (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 303-304 [63 Cal.Rptr.2d 74, 935 P.2d 781], fn. omitted.)

*Sullivan* was concerned with the phrase "final judgment." In section 340.9, subdivision (d)(1), the Legislature excepted from section 340.9's reach any "claim that has been litigated to finality in any court of competent jurisdiction prior to the effective date of this section [January 1, 2001]." ■ The Legislature did not use the phrase "in which a final judgment has been entered." A case has not been "litigated to finality" until timely pending appeals have been resolved. While the appeal is pending, the case has not been "litigated to finality." (*Hellinger v. Farmers Ins. Exchange*, *supra*, 91 Cal.App.4th at pp. 1059-1061; *20th Century Ins. Co. v. Superior Court*, *supra*, 90 Cal.App.4th at pp. 1278-1279; cf. *Campanelli v. Allstate Ins. Co.* (C.D.Cal. 2000) 119 F.Supp.2d 1073, 1076.)

Moreover, that result is particularly apt here because, as stated in Judge London's ruling, which was incorporated into the trial court ruling and judgment, "[a]ll parties retain the right of appeal to the California Court of Appeal."

Thus, section 340.9, subdivision (d)(1) does not exempt the Bialos' case from revival.

### DISPOSITION

We reverse the summary judgment and remand the case to the trial court for further proceedings. The Bialos are entitled to their costs on appeal.

Spencer, P. J., and Mallano, J., concurred.