**ESTATE of John G. MIGLIACCIO, Carmen Migliacco and Robert D. Kaiser, on behalf of themselves and all others similarly situated**

v.

**MIDLAND NATIONAL LIFE INSURANCE COMPANY, an Iowa corporation, Sammons Financial Group, Inc., a Delaware corporation, and Sammons Enterprises, Inc., a Delaware corporation.**

No. CV 06–1007CAS (MANX).

United States District Court, C.D. California.

June 12, 2006.

As Amended Aug. 21, 2006.

■■■■■■

---

Andrew S. Friedman, Elaine A. Ryan, Patricia N. Syverson, Bonnett Fairbourn Friedman & Balint, Phoenix, AZ, Christa L. Collins, J. Andrew Meyer, John A. Yanchunis, James Hoyer Newcomer & Smiljanich, Tampa, FL, Ingrid M. Evans, Louise H. Renne, Renne Sloan Holtzman and Sakai, San Francisco, CA, John J. Stoia, Jr., Lerach Coughlin Stoia Geller Rudman and Robbins, Los Angeles, CA, Helen I. Zeldes, Rachel L. Jensen, Theodore J. Pintar, Lerach Coughlin Stoia Geller Rudman and Robbins, Howard D. Finkelstein, Mark L. Knutson, Finkelstein & Krinsk, Marisa C. Livesay, Stephen R. Basser, Barrack Rodos and Bacine, San Diego,

CA, Evangeline Garris, William M. Shernoff, Shernoff Bidart Darras, Claremont, CA, for Estate of John G. Migliaccio, Carmen Migliacco and Robert D. Kaiser.

Linda B. Oliver, Reed Smith, Oakland, CA, Terry B. Bates, Reed Smith, Los Angeles, CA, for Midland National Life Insurance Company and Sammons Financial Group, Inc.

SNYDER, District Judge.

**Proceedings: MIDLAND NATIONAL LIFE INSURANCE COMPANY'S AND SAMMONS FINANCIAL GROUP, INC'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION; ALTERNATIVE MOTION TO STAY CASE; ALTERNATIVE MOTION TO STRIKE ALLEGATIONS FROM COMPLAINT (filed March 24, 2006)**

**PLAINTIFFS' MOTION TO STRIKE UNSUPPORTED FACTUAL ASSERTIONS OFFERED IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (filed April 17, 2006)**

## I. BACKGROUND

Plaintiffs Estate of John G. Migliaccio, Carmen Migliaccio ("Carmen") (collectively, the "Migliaccio plaintiffs") and Robert D. Kaiser filed this class action case on February 17, 2006, against defendants Midland National Life Insurance Company ("Midland") and its parent companies Sammons Financial Group, Inc. and Sammons Enterprises, Inc. (collectively, "defendants") alleging claims for (1) violation of the Racketeer Influenced and Corrupt Organizations Acts ("RICO"); (2) Elder Abuse; (3) Unlawful, Deceptive and Unfair Business Practices; (4) Unlawful, Deceptive and Misleading Advertising; (5) Breach of Fiduciary Duty; (6) Aiding and Abetting Breach of Fiduciary; (7) Fraud; (8) Negligent Misrepresentation; (9) Fraudulent Inducement; and (10) Unjust Enrichment and Imposition of Constructive Trust.

Plaintiffs' complaint alleges that Midland, working with brokers and Individual Marketing Organizations ("IMOs"), defrauded class representatives John G. Migliaccio and Robert D. Kaiser into purchasing various deferred annuities that matured after their actuarial life expectancies as part of a broad, decade-long scheme to bilk seniors of money. Class Action Complaint ("Complaint") ¶¶ 20, 24, 26, 30–31, 50, 52–53, 55, 58, 65. Part of Midland's scheme, plaintiffs further allege, involves training its sales representatives to lure seniors into their confidence by offering assistance with estate and financial planning, gaining their trust, and ultimately selling them improper annuities using standardized marketing materials and annuity contracts, without first fully disclosing the disadvantages of such annuities. *Id.* ¶¶ 14, 15, 32–35, 42. Plaintiffs additionally allege that defendants engage in "churning" by persuading seniors to surrender existing annuities and/or borrow against the cash value in existing life insurance policies to purchase other of its deferred annuities, again, without properly disclosing the substantial surrender charges, penalties, additional sales commissions and loss of investment value such seniors face as a result. *Id.* ¶¶ 7, 45–49.

On March 24, 2006, defendants brought the present motion ("Mot.") to dismiss plaintiffs' claims for failure to state a claim, or in the alternative to stay the case, or to strike allegations. In response, on April 17, 2006, plaintiffs filed a motion captioned "Motion to Strike Unsupported Factual Assertions Offered in Support of Defendants' Motion to Dismiss" ("Pls' Mot. to Strike"), also addressed herein. The following day, April 18, 2006, plaintiffs filed an opposition to defendants' motion ("Opp'n"). On May 8, 2006, defendants

filed both a reply ("Reply") to plaintiffs' opposition and an opposition to plaintiffs' motion to strike ("Opp'n to Mot. to Strike"). On May 15, 2006, the Court held a hearing on the parties' motions. Thereafter, on May 30, 2006, the Court issued a tentative order, and set further telephonic oral argument regarding the issue of whether plaintiffs' action is barred by the "two dismissal rule" pursuant to Fed. R.Civ.P. 41(a). The Court heard further oral argument on June 9, 2006, and took the matter under submission. After careful consideration of the arguments raised by the parties in their respective briefs at the hearings, the Court hereby finds and concludes as follows.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A court must not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir.1996).

In considering a motion pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998); *Cahill*, 80 F.3d at 338. The complaint must be read in the light most favorable to the plaintiff. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Sprewell*, 266 F.3d at 988; *Western Min-*

*ing Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir.1996), *rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed.R.Civ.P. 15(a). However, leave to amend may be denied "when the court determines that other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000).

### B. Rule 12(f)

A motion to strike material from a pleading is made pursuant to Fed.R.Civ.P. 12(f). Under Rule 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." A Rule 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material. The Court may also strike under Rule 12(f) a prayer for relief which is not available as a matter of law. *Tapley v. Lockwood Green Engineers*, 502 F.2d 559, 560 (8th Cir.1974). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Rule 12(f) are disfavored. *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D.Cal.1996).

### III. DISCUSSION

### A. DEFENDANTS' MOTION TO DISMISS

#### 1. The Migliaccio Plaintiffs' Standing

#### a. Proper Party Defendants

Defendants first argue that because an estate is a not a legal entity and therefore cannot be a party to a lawsuit, all claims by the Estate of John G. Migliaccio (the "Estate") must be dismissed. Mot. at 10–11. Defendants further argue that because Carmen has not pled that she is an executor, administrator or trustee of the Estate, she too is an improper party in this action. *Id.* Plaintiffs respond that Carmen was the lawful spouse of John, had a vested community property interest in his annuities as a beneficiary and therefore has standing. Opp'n at 6. Citing *Karras v. Teledyne Indus., Inc.* 191 F.Supp.2d 1162 (S.D.Cal.2002), plaintiffs further argue that, as in *Karras*, the Trust has suffered economic injury sufficient to satisfy Article III standing. *Id.* at 6–7.

Pursuant to Fed.R.Civ.P. 17(a), a "[p]laintiff must be the 'real party in interest,' with respect to the claim sued upon." Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial, ¶ 7:1. However, "[a]n estate or trust is *not* a legal entity and has no capacity to sue. Title to an estate or trust assets held by an executor, administrator or trustee, on behalf of beneficiaries. Thus, as to claims held by an estate or trust, the *executor, administrator, or trustee* is the real party in interest." *Id.* ¶ 7:7 (citing Fed. R.Civ.P. 17(a); *Karras*, 191 F.Supp.2d at 1171–72) (emphasis in original). Further, with respect to beneficiaries, "[s]ince the trustee is the real party in interest, it may maintain the action in its own name 'without joining the party for whose benefit the action is brought.'" *Id.* ¶ 7:9 (citing Fed. R.Civ.P. 17(a); *In re Davis*, 194 F.3d 570, 578 (5th Cir.1999)).

Plaintiffs' class complaint identifies the Estate of John G. Migliaccio as a plaintiff. *See* Complaint ¶ 19. However, as a matter of law, the Estate cannot be a plaintiff in this lawsuit. Fed.R.Civ.P. 17(a); Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial ¶ 7:7. Rather, only the Estate's trustee, administrator or executor may bring suit on its behalf as the real party in interest. *Id.* The Court therefore GRANTS defendants' motion to dismiss with leave to amend the complaint in order to substitute the Estate's trustee, adminis-

trator or executive as the real party in interest. *See Cloud v. Northrop Grumman Corp.*, 67 Cal.App.4th 995, 1005–06, 79 Cal.Rptr.2d 544 (1998); *Franciscan Hill Homeowners Ass'n v. Newhall Land & Farming Co.*, 2003 WL 22853530, *20 (Cal.App.2003) ("Where, as here, the issue is one of standing, courts permit amendments to name the real party in interest.") (citing *Tenants Assn. of Park Santa Anita v. Southers*, 222 Cal.App.3d 1293, 1304, 272 Cal.Rptr. 361 (1990)).

With respect to Carmen, the Court finds that plaintiffs have sufficiently alleged that she is a beneficiary of the Estate and is thus an "interested person" for purposes of Article III standing. *See* Cal. Prob Code § 48(a)(1)[1]; *Estate of Lowrie*, 118 Cal.App.4th 220, 229–30, 12 Cal.Rptr.3d 828 (2004). Accordingly, defendants' motion to dismiss Carmen's claims on the basis that she is not named as an executor, administrator or trustee of the Estate is hereby DENIED.

### b. The Two Dismissal Rule

Defendants argue that the Milgiaccio plaintiffs' action is barred by the "two dismissal rule" pursuant to Fed.R.Civ.P. 41(a). Mot. at 11. Fed.R.Civ.P. 41(a) provides:

*(a) Voluntary Dismissal: Effect Thereof*

*(1) By Plaintiff; by Stipulation.* Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

*(2) By Order of Court.* Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

■ Defendants assert that the Migliaccio plaintiffs have twice dismissed this action[2] and thus "fall squarely within the

---

**1.** Cal. Prob.Code § 48(a)(1) provides that an "interested person" includes: "An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding."

**2.** Defendants request that the Court take judicial notice of *The Estate of John G. Migliaccio, et al. v. Midland Nat'l Life Ins., Co., et al.*, Case No. BC 327332 filed on January 25, 2005, in the California Superior Court for the County of Los Angeles, and *The Estate of John G. Migliaccio, et al. v. Midland Nat'l Life Ins., Co., et al.*, Case No. CV 06–208 filed in the United States District Court for the Southern District of California, and the respective dismissals therein. RJN Exs. A, C, F–I. Defendants' request for judicial notice is hereby GRANTED. Case No. BC 327732 was dismissed on February 23, 2006. *See* RJN Ex. F. Case No. CV 06–208 was dismissed on February 17, 2005. *See id.*

'adjudication on the merits' provision on Rule 41(a)(1)." Mot. at 11. Plaintiffs do not dispute that the action has been voluntarily dismissed twice, but argue instead that their initial dismissal was by motion and court order pursuant to California Rule of Court Section 1860, and thus the two dismissal rule does not apply. Opp'n at 7–8. Both parties rely upon *ASX Ins. Corp. v. Newton*, 183 F.3d 1265 (11th Cir. 1999). *See id.*; Reply at 3–4.

In *ASX*, the plaintiff brought a third action against the same defendants following dismissal, on its own motion, of prior state and federal actions. The *ASX* court concluded that the plaintiff's first dismissal, which occurred by motion and court order pursuant to Rule 41(a)(2), did not implicate the Rule 41(a)(1) two dismissal rule. 183 F.3d at 1268. In reaching this conclusion, the *ASX* court noted that "the primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading." *Id.* (quoting *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1017 (2d Cir.1976) (citations omitted); *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir.1963) ("The reason for this arbitrary limitation [set out in the two-dismissal rule] . . . is to prevent unreasonable abuse and harassment.")). The court accordingly reasoned that:

> a dismissal obtained by motion and order of the court under Rule 41(a)(2) or similar state rule is not unilateral and does not pose the same danger of abuse or harassment as does a Rule 41(a)(1) dismissal by plaintiff's notice. In ruling on such motions, a court has discretion to determine whether the dismissal will be with or without prejudice and with or

without conditions based on its view of the case and the plaintiff's actions.

*Id.* Further, the *ASX* court stated in dicta:

> Appellees point out that some claims such as class actions and derivative suits cannot be dismissed without court approval or order. They argue that under the interpretation of the two dismissal rule we espouse today, a plaintiff could bring such claims without ever being subject to the two dismissal rule. We need not resolve this issue today, but note it is not at all clear that those rules requiring court approval or order for dismissal necessarily transform a Rule 41(a)(1) notice or stipulation of dismissal into a Rule 41(a)(2) dismissal by court order.

*Id.* n. 6.

Further, with respect to whether dismissal of a class action should be treated pursuant to Rule 41(a)(1) or Rule 41(a)(2), *Moore's Federal Practice* states as follows:

> Despite the need for a court order to dismiss a class action, the standard for court ordered dismissals under 41(a)(2) does not automatically apply. When the motion is made *prior to* the service of an *answer* or motion for summary judgment, the motion is *still treated as one under 41(a)(1)*, subject only to the Rule 23(e) inquiry concerning whether the plaintiff class would be prejudiced.

James Moore, *et al., Moore's Federal Practice* ¶ 41.32[1] (emphasis added).

██ At the hearing on May 15, 2006, the Court issued a tentative minute order indicating its intention to dismiss the Migliaccios based on Rule 41(a)(1). Upon further review, it appears that Rule 41(a)(2) applies. Although not raised by the parties, the Superior Court record indicates, and the parties have confirmed, that the Migliaccio plaintiffs applied for dismissal of the Los Angeles Superior

Court action on February 23, 2006, *after* Midland had filed answers to both the complaint and first amended complaint (on March 10, 2005, and September 30, 2005, respectively). Thus, according to *Moore's Federal Practice*, the California Superior Court's subsequent approval of plaintiffs' application should be treated as a dismissal by motion and court order pursuant to Rule 41(a)(2), rather than as a dismissal pursuant to Rule 41(a)(1). Furthermore Rule 23(e) is not implicated because no class action has been certified in this or any other case in which the Migliaccios are plaintiffs. As a result, the Migliaccios' instant suit is not barred by the two dismissal rule of Rule 41(a)(1). Defendants' motion to dismiss the Migliaccio plaintiffs' action on the ground that it is barred by the two dismissal rule is therefore DENIED.

### c. Absence of Damage or Loss under Article III Standing

■■ Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Supreme Court has established that parties seeking to invoke federal jurisdiction must demonstrate three elements. *Id.* at 560, 112 S.Ct. 2130. First, they must have suffered an "injury-in-fact" to a legally protected interest that is both "concrete and particularized" and "actual or imminent," not "'conjectural' or 'hypothetical.'" *Id.* Second, there must be a causal connection between their injury and the conduct complained of. *Id.* Third, it must be "likely," rather than merely "speculative," that their injury will be "redressed by a favorable decision." *Id.* at 560–61, 112 S.Ct. 2130, (citations omitted). In addition, where plaintiffs seek declaratory or injunctive relief there is a further requirement that they show a very significant possibility of future harm; it is insufficient to demonstrate only a past injury. *Bras v. California Pub. Util. Comm'n,* 59 F.3d 869, 873 (9th Cir.1995), *cert. denied,* 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 748 (1996).

Defendants argue that Carman lacks standing because the Complaint fails to allege that she suffered "injury in fact." Mot. at 12–13. In particular, defendants assert that although the Complaint alleges John Migliaccio entered into a deferred annuity contract that includes surrender charges, it "does not alleged that [Carmen] incurred any such charge ... or any other category of loss or damage." *Id.* Plaintiffs respond that the Complaint sets forth ample allegations of injury "sustained upon the surrender of [the Migliaccios'] Conseco annuity to purchase Mr. Migliaccio's Midland annuity." Opp'n at 9–10 (citing Complaint ¶¶ 52, 53, 57). Plaintiffs further argue that the federal courts have rejected plaintiffs' suggestion that a person subject to potential injury must wait until he or she actually sustains injury in order to have Article III standing. *Id.* at 10 (citing *Cent. Delta Water Agency v. Unites States of America,* 306 F.3d 938, 947 (9th Cir. 2002)).[3]

With respect to the Migliaccio plaintiffs, the Complaint alleges, *inter alia,* that:

50. In or about January 2003, Mr. Bassem Btadini, d/b/a Estate Planning Services and Insurance Services, a duly authorized Midland sales agent approached plaintiff John G. Migliaccio, then 73 years of age, ostensibly for the purpose of providing additional estate planning services and, in connection

---

**3.** Plaintiffs additionally contend that even a claim for nominal damages is sufficient to support injury in fact for purposes of Article III standing. Opp'n at 9 (citing *Knight v. Kenai Peninsula Borough Sch. Dist.,* 131 F.3d 807 812 (9th Cir.1997)).

therewith, solicited, offered and sold Mr. Migliaccio a Midland Flexible Premium Deferred Annuity, certificate number 8500108296, which had a maturity date of January 27, 2045, effectively twisting plaintiffs from a Conseco Annuity Assurance Company annuity which was reaching maturity, an act against Mr. Migliaccio's best financial interests. Mr. Btadini had previously sold and formed for the Migliaccio's a living trust although, at no time was he licensed to practice law or provide estate planning advice or services. At the time of the annuity purchase, Mr. Migliaccio was 73 years old and, in fact, Mr. Migliaccio died 17 months after the annuity was issued. The Midland annuity required an initial premium payment of $42,942.99 and had a 13–year surrender charge period.

51. At all times relevant to this action, John G. Migliaccio was over the age of 73 and plaintiff, Carmen Migliacio, was over the age of 65. However, at no time prior to issuing the Migliaccios an annuity did the defendants conduct a suitability review.

52. Plaintiffs were harmed by their purchase of a Midland deferred annuity. Among other things, the extended maturity date, restricted funds access and substantial surrender charges make it an unsuitable financial product for plaintiffs. In addition to the 2045 maturity date, the Midland annuity allowed plaintiffs only minimal access to their principal investment for the first 13 years of the annuity, unless they paid substantial surrender charges to Midland.

53. Upon Mr. Migliaccio's death on May 31, 2004, Midland was obligated to pay the annuity's then account balance, including the accrued interest, to Carmen Migliaccio who was the designated beneficiary. The amount payable did not include, *inter alia*, the surrender charges the Migliaccios incurred in con-

nection with the transfer of the proceeds from their Conseco annuity to Midland Complaint ¶¶ 50–53.

■ The Court finds that the Complaint sufficiently alleges that the Migliaccios suffered both actual and threatened economic damages as result of surrendering their Conseco annuity to purchase a Midland annuity, which surrender was allegedly caused by defendants' wrongful conduct. *See* Fed.R.Civ.P. 12(b)(6); *Cent. Delta Water Agency,* 306 F.3d at 947 ("The Supreme Court has consistently recognized that threatened rather than actual injury can satisfy Article III standing requirements.") (internal quotations and citations omitted). Accordingly, Carmen has adequately alleged injury in fact and the defendants' motion to dismiss her claims on the ground that she has not done so is therefore DENIED.

### 2. Interference with State Regulation of Annuity Contracts

Defendants next argue that plaintiffs' complaint must be dismissed because "it represents an attempt to re-legislate a subject matter that has already been the subject of careful policymaking by state legislators and state insurance regulators." Mot. at 14. Defendants offer two principal arguments in support of this contention. First, defendants contend that multiple states, including California and Florida, have declared sales of annuities to seniors to be legal. *Id.* at 14–15. Second, defendants argue that plaintiffs' claims violate the primary jurisdiction doctrine because such claims improperly intrude upon state legislative and regulatory law. *Id.* at 15

■ The primary jurisdiction doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *U.S. v. W. Pac. R.R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The Supreme Court

has held that the primary jurisdiction doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.* The Ninth Circuit has further instructed:

Whether the doctrine of primary jurisdiction applies in any particular situation depends on the extent to which Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues arising in juridical proceedings. Certain factors are "uniformly present" in cases where courts abstain from judicial action on a particular issue pursuant to the primary jurisdiction doctrine. These include Congressional intent to imbue an administrative agency with total responsibility to resolve or address the particular issue and the need for expertise or uniformity in the administration of such a decision. Furthermore, while competence of an agency to pass on an issue is a necessary condition to the application of the doctrine, competence alone is not sufficient. The particular agency deferred to must be one that Congress has vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question.

*U.S. v. Culliton,* 328 F.3d 1074, 1082 (9th Cir.2003) (citations and internal quotations omitted).

Defendants argue that because the California and Florida legislatures and Departments of Insurance "have already comprehensively legislated and regulated deferred annuity contracts in both states, and the Commissioners have effective enforcement mechanism," plaintiffs' complaint violates the primary jurisdiction doctrine. Mot. at 15–19.

Plaintiffs respond that the primary jurisdiction doctrine does not apply for two reasons. Opp'n at 11–15. First, plaintiffs argue that defendants have the burden of demonstrating a basis upon which to invoke the primary jurisdiction doctrine, which they have not carried. *Id.* at 11. Second, plaintiffs contend that where, as here, an action is predicated upon common law claims such as misrepresentation, misleading advertising and breach of fiduciary duty, it is well settled that the primary jurisdiction doctrine does not apply. *Id.* at 11–15 (citing *Nader v. Allegheny Airlines,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976)). Specifically, plaintiffs assert that their claims involve straightforward issues that do not implicate the insurance commissioner's "special expertise," and which have routinely been resolved by federal and state courts without resort to guidance from the relevant state insurance department. *Id.* at 13–14.

██ The Court is unpersuaded that, as defendants argue, plaintiffs' complaint is barred by the primary jurisdiction doctrine. First, plaintiffs' complaint is grounded in common law claims for fraudulent misrepresentation. Such claims do not appear to involve "technical questions of fact uniquely within the expertise and experience of an [insurance] agency." *Nader,* 426 U.S. at 305, 96 S.Ct. 1978.[4]

---

4. To the contrary, as the Supreme Court explained in *Nader v. Allegheny Airlines:* "The standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of this case." 426 U.S. at 305–06, 96 S.Ct. 1978. There, the Court considered whether the Civil Aeronautics

Further, as plaintiffs point out, numerous courts have addressed similar unfair competition claims under identical statutes without seeking guidance from the California Department of Insurance. *See* Opp'n at 14. Nor is the Court persuaded that dismissal of plaintiffs' complaint is required because California and Florida have declared the sale of annuities to seniors to be legal. The Court does not construe plaintiffs' complaint to challenge the legality of annuities so broadly. Rather, plaintiffs allege that defendants have engaged in fraudulent, deceptive and unfair practices in marketing and selling to seniors these *otherwise* legal financial instruments. *See Bacon v. American Int'l Group*, 415 F.Supp.2d 1027, 1031 (C.D.Cal.2006) (denying insurer's motion to dismiss on the same ground where plaintiff's complaint "is not based on the argument that the sale of annuities to seniors was illegal *per se*, but, rather, is based on 'defendants' false and misleading statements, negligence and breach of fiduciary duty in connection with the sales of deferred annuities'") (emphasis in original). For these reasons, defendants' motion to dismiss plaintiffs' complaint on the ground that it violates the primary jurisdiction doctrine is DENIED.

### 3. Pleading Fraud under Fed. R.Civ.P. 9(b)

Defendants next argue that, pursuant to Fed.R.Civ.P. 9(b), plaintiffs fail to plead their claims which sound in fraud with the requisite particularity. Mot. at 19–22.

■■■■■ Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." However, Fed.R.Civ.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," and therefore imposes heightened pleading requirements when a plaintiff alleges fraud. In order to satisfy these heightened pleading requirements, the Ninth Circuit has held that a fraud claim must allege the time, place, and content of the alleged misrepresentations, as well as provide an explanation as to why the statement or omission complained of was false or misleading. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–49 (9th Cir. 1994). However, Rule 9(b)'s particularity requirement is relaxed in instances of corporate fraud where the facts supporting the allegation of fraud are exclusively within the defendants' possession. *State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 635 (N.D.Cal.1997)

Having carefully reviewed plaintiffs' complaint, the Court finds that plaintiffs have alleged their fraud-based claims with adequate particularity to meet the heightened pleading requirements of Rule 9(b). Accordingly, defendants' motion to dismiss plaintiffs' fraud claims for lack of particularity is DENIED.

### 4. Breach of Fiduciary Duty

Defendants argue that plaintiffs' various claims based on breach of fiduciary duty must be dismissed because an insurer owes no fiduciary duty to its insureds under California law. Mot. at 22–24 (quoting, *inter alia, Morris v. Paul Revere Life Ins. Co.*, 109 Cal.App.4th 966, 135 Cal. Rptr.2d 718 (2001)) ("An insurer is not a

---

Board (the "Board") had special competence to determine if an airline's practice of deliberately over-booking flights was "deceptive" within the meaning of the Federal Aviation Act, which, *inter alia,* authorized the Board to investigate and determine whether an air carrier is engaged in unfair or deceptive practices in the sale of air transportation. *Id.* at 292, 96 S.Ct. 1978. The Court held that a stay pending reference to the Board was inappropriate. *Id.*

fiduciary, and owes no obligation to consider the interests of its insured above its own."). Nor, defendants contend, may plaintiffs premise Midland's fiduciary duty to plaintiffs on its sales agents purported positions as financial and estate planners. *Id.* at 23. Defendants argue that such an argument is unavailing because "California law does not recognize creation of fiduciary duties by generic allegations of agency" and strictly limits the circumstances in which a vicarious breach of fiduciary duty is cognizable. *Id.* (citing *United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.*, 1 Cal.3d 586, 594–95, 83 Cal.Rptr. 418, 463 P.2d 770 (1970); *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1147–48, 26 Cal.Rptr.3d 401 (2005)). Accordingly, defendants contend that the plaintiffs' second claim (elder abuse), fifth claim (breach of fiduciary duty) and sixth claim (aiding and abetting breach of fiduciary duty) should all be dismissed. *Id.* at 24.

Plaintiffs respond (1) that their allegations that defendants' sales agents acted as financial advisors and estate planning specialists are sufficient to establish defendants' fiduciary duty to the class members; Opp'n at 21; (2) that a deferred annuity is not merely a life insurance policy but a "complex investment product" which requires a purchaser to rely on the agent for superior knowledge, *id.* at 22; (3) that even if annuities constitute insurance, the relationship between insurer and insured is "akin to a fiduciary relationship," *id.* (citing *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal.4th 1142, 1150, 113 Cal.Rptr.2d 70, 33 P.3d 487 (2001)); and (4) that defendants are liable even if no direct fiduciary relationship between Midland and the class members exists because the Complaint alleges that Midland aided and abetted a breach of fiduciary duty by its sales agents, *id.* at 22–23.

■ In order to plead a claim for breach of fiduciary duty, the claimant must allege (1) the existence of a fiduciary relationship giving rise to a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach. *Pierce v. Lyman,* 1 Cal.App.4th 1093, 1101, 3 Cal. Rptr.2d 236 (1991). Whether a fiduciary relationship exists in any given situation is a question of fact. *Michelson v. Hamada,* 29 Cal.App.4th 1566, 1575–1576, 36 Cal. Rptr.2d 343 (1994). Construing California law, the Ninth Circuit has held that the insurer-insured relationship does not give rise to an independent action for common law breach of fiduciary duty. *Solomon v. North American Life & Cas. Ins. Co.,* 151 F.3d 1132, 1138 (9th Cir.1998) (insurer owed no fiduciary duty to an insured as a result of their insurer-insured relationship); *Almon v. State Farm Fire & Cas. Co.,* 724 F.Supp. 765 (S.D.Cal.1989); *Kanne v. Connecticut Gen. Life Ins. Co.,* 607 F.Supp. 899 (C.D.Cal.1985), *rev. on other grounds,* 859 F.2d 96 (9th Cir.1988) ("California law does not recognize an action for breach of fiduciary duty between an insured and an insurer."); *cf. Twomey v. Mitchum, Jones & Templeton, Inc.* 262 Cal.App.2d 690, 708–09, 69 Cal.Rptr. 222 (1968).

■ Further, California employs the common law rule for purposes of determining aiding and abetting tort liability. *Casey v. U.S. Bank Nat'l Ass'n,* 127 Cal. App.4th 1138, 1144, 26 Cal.Rptr.3d 401 (2005). Accordingly, "[l]iability may be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Id.* (internal quotations and citations omitted).

Accordingly, to state a claim for aiding and abetting a breach of fiduciary duty here, plaintiffs must adequately allege that defendants: (1) knew their sales agents' conduct constituted a breach of fiduciary duty; and (2) gave "substantial assistance or encouragement" to their sales agents to accomplish the breach. *See also In re Textainer P'ship Sec. Litig.*, 2005 WL 3801596, *16 (N.D.Cal.2005).

■ The Court concludes plaintiffs' allegations are sufficient to state claims for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty against defendants in that the relationship alleged is not simply that of an insurer-insured, but rather one which may entail a fiduciary duty. Specifically, plaintiffs' complaint contains extensive allegations that defendants trained their sales agents to lure seniors citizens into their confidence by offering assistance with estate and financial planning, ultimately to sell them improper annuities using standardized marketing materials and annuity contracts that defendants supplied. *See, e.g.,* Complaint ¶¶ 14, 15, 32–35, 42. The Court is thus unpersuaded that, as defendants contend, the complaint allegations are too "generic" or insufficiently "precise" to state a claim for either a direct or vicarious breach of fiduciary duty. *See* Mot. at 23. Rather, because plaintiffs' allegations are detailed, and because the Court must accept them as true and construe them in a light most favorable to plaintiff at this stage of the proceedings, the Court cannot say with certainty that plaintiffs can prove no set of facts entitling them to relief on a breach of fiduciary or aiding and abetting breach of fiduciary theory. *See Michelson*

*v. Hamada,* 29 Cal.App.4th 1566, 1575–1576, 36 Cal.Rptr.2d 343 (1994); *Comm. On Children's Television, Inc. v. Gen. Foods Corp.,* 35 Cal.3d 197, 222, 197 Cal. Rptr. 783, 673 P.2d 660 (1983) ("[I]n an exceptional case a court might be able to find that a close and trusting relationship between buyer and seller, in which the buyer relied on the seller and the seller recognized that reliance, justified imposing fiduciary duties."); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996). The Court therefore DENIES defendants' motion to dismiss plaintiffs' second, fifth and sixth claims for relief.

### 5. Annuities as "Goods" or "Services" within the meaning of CLRA

Defendants finally argue that plaintiffs' may not rely on violations of the California Consumers Legal Remedies Act ("CLRA") to state their second claim for violation of the UCL because insurance is neither a "good" nor "service" under the CLRA.[5] Mot. at 24. In *Bacon ex rel. Moroney v. American Intern. Group,* cited by defendants, a district court in the Northern District of California addressed the same question and concurred. 415 F.Supp.2d 1027, 1035–36 (N.D.Cal.2006).[6] The *Bacon* Court first noted that the California Supreme Court had stated in dicta that, "insurance is technically neither a 'good' nor a 'service' within the meaning of the [CLRA]." *Id.* at 1036 (quoting in *Civil Service Employees Ins. Co. v. Superior Court,* 22 Cal.3d 362, 376, 149 Cal.Rptr.

---

**5.** The CLRA prohibits certain specified "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ.Code § 1770(a).

Defendants recognize that plaintiffs do not set out a separate claim for violation of the CLRA. Mot. at 24.

**6.** *Bacon* was withdrawn from publication at the request of the court. *See* 415 F.Supp.2d at 1027.

360, 584 P.2d 497 (1978)). It further observed that the California Insurance Code includes "annuities" in the definition of "life insurance." *Id.* (citing Cal. Ins.Code § 101). The *Bacon* court accordingly reasoned that because the CLRA does not apply to sales of insurance, it likewise does not apply to the sale of annuities. *Id.* In reaching its holding, the *Bacon* court specifically examined and rejected the two cases relied upon by the instant plaintiffs: *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal.3d 582, 200 Cal.Rptr. 38, 676 P.2d 1060 (1984) and *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 119 Cal.Rptr.2d 190 (2002). *Id.* (stating that "[n]either case, however, is authority for the proposition that annuities are goods or services under the CLRA").

Plaintiffs offer two main arguments in response. First, plaintiffs argue that defendants' attack on its CLRA claim ignores their allegation that defendants engaged in deceptive and misleading marketing of estate and financial planning, which implicates a service for which no exception applies. Opp'n at 23–24. Second, plaintiffs contend that "in the absence of any appellate decisions that annuities fall outside the ambit of the CLRA, the Court should resolve any ambiguities about coverage in favor of plaintiffs." *Id.* at 24 (citing *Boliver v. Sur. Co.*, 140 Cal.Rptr. 259, 72 Cal.App.3d Supp. 22, 33 (1977)).

 Following the reasoning articulated in *Bacon*, the Court concludes that annuities do not fall within the ambit of the CLRA. The Court is persuaded by *Bacon* that plaintiffs' reliance on *Kagan* and *Massachusetts Mutual* is unavailing. *See* 415 F.Supp.2d at 1036. The Court has located no subsequent authority which calls into question the California Supreme Court's dicta in *Civil Service Employees* stating that an annuity is neither "good" nor "service" within the meaning of the CLRA. In sum, like *Bacon*, the Court finds that *Civil Service Employees* remains the strongest indication of how the California Supreme Court's would resolve this issue. Therefore, to the extent plaintiffs' CLRA claim is predicated on defendants' sale of annuities—as distinct from their providing estate or financial planning—such a claim cannot lie. The Court thus GRANTS defendants' motion to dismiss plaintiffs' UCL claim only insofar as it is premised on defendants' sale of annuities under the CLRA. Defendants' alternative motion to strike plaintiffs' CLRA allegations is therefore DENIED as moot.

## B. PLAINTIFFS' MOTION TO STRIKE

Plaintiffs charge that defendants, disregarding Fed.R.Civ.P. 12(b)(6) and Ninth Circuit law, "have improperly introduced into the record a host of self-serving 'facts' and contentions of disputed fact that are neither referenced nor mentioned in the Complaint and are not properly considered on a motion to dismiss." Pls' Mot. to Strike at 1. Plaintiffs identify specific assertions in defendants' moving papers concerning: (1) the calculation and amount of Midland's annuity distribution made to Carmen; (2) statements purportedly made by John G. Migliaccio in connection with his purchase of a Midland annuity; and (3) the purported "advantages" of deferred annuities. *Id.* at 2–5. Plaintiffs contend that all such assertions must be excluded because, at this stage of the proceedings, the Court may not consider any material beyond the pleadings. *Id.* at 1–2. Plaintiff further assert that even if such factual assertions were relevant to the motion to dismiss, they are entirely unsupported by evidence and must alternatively be stricken as unfounded. *Id.* at 5–6. Accordingly, plaintiffs urge the Court to strike defendants' inadmissible, improper and unsupported factual assertions and all the arguments based thereon. *Id.* at 6.

Defendants acknowledge that "the Court cannot rely on these facts, to the extent they were not included or referenced in Plaintiffs' Complaint or judicially noticeable." Opp'n to Mot. to Strike at 2. Defendants respond, however, that they provided "additional relevant facts … in order to give their Motion context" and the Court "background information." *Id.* at 1. Defendants further respond that none of the arguments in their motion to dismiss "depends upon these background facts." *Id.* at 2.

As noted above, in considering a motion pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir. 1998); *Cahill,* 80 F.3d at 338. "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001) (internal quotations and citation omitted).

In light of the Court's holdings above, which do not depend on any facts introduced by defendants, plaintiffs' motion to strike is DENIED as moot.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, strike or stay plaintiffs' claims is GRANTED in part and DENIED in part. Defendants' motion to dismiss plaintiffs' CLRA claims is GRANTED insofar as it is predicated on defendants' sale of annuities. In all other respects, defendants' motion is hereby DENIED. Further, plaintiffs' motion to strike is DENIED as moot.

IT IS SO ORDERED.